IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOEL JORDAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00715-O-BP |
| § | |
| IRONWORKERS LOCAL 263, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* Plaintiff Joel Jordan sued Defendants Julio Gonzales, Jr., Mark Fritts, Greg Schultze, Herlinda Gonzalez Darr, Michael Salceda ("Individual Defendants"), and Ironworkers Local 263 ("Local 263") on June 3, 2021, alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 1. Defendants filed a Motion to Dismiss on July 6, to which Jordan replied with a Response and brief in support on July 26. ECF Nos. 10, 17, and 18, respectively. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT in part and DENY in part** Defendants' Motion to Dismiss (ECF No. 10). For the reasons discussed below, Judge O'Connor should **GRANT** the Motion on Jordan's claims against the Individual Defendants, but **DENY** the Motion on Jordan's claims against Local 263.

**I.    BACKGROUND**

Joel Jordan wants his job back, $95,940 in back pay, and $267,000 in damages for Defendants' alleged Title VII violations. *See* ECF No. 1 at 15. Jordan was fired in February 2020 and filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in May 2020. *Id.* at 2. Defendants deny firing Jordan and argue that an entity named Texas Iron

Workers Training Trust employed him and later terminated his employment. ECF No. 10 at 2. Jordan received a right-to-sue letter from the EEOC on March 5, 2021, and timely filed this lawsuit on June 3, 2021. ECF No. 1 at 2.

Jordan, an African American, says "racial discrimination is deeply embedded in Iron Workers Local 263" and recounts "racial slurs and derogatory comments and harassment" by Local 263 and the Individual Defendants. *Id.* at 10. Despite Jordan's objections, his coworkers allegedly used racial pejoratives daily during his tenure. *Id.* Jordan also alleges retaliation on Defendants' part, as he was allegedly subjected to "impossible job task[s], a heavier workload, and stricter scrutiny than his predecessors" after filing an administrative complaint regarding this racially charged workplace. *Id.* at 12. Thereafter, Jordan says Local 263, acting through the Individual Defendants, "taunt[ed] Plaintiff's [a]dministrative position by placing insubordinate signs on [his] office window denouncing his position." *Id.* at 12. He claims the office's security camera captured this and that cell phone recordings documented other instances of "taunting." *Id.*

Jordan's tensions within Local 263 reached a boiling point in February 2020. He claims he was "repeatedly threatened to be reprimanded and disciplined for relatively minor mistakes" and was fired without management first attempting to implement a "Personal Improvement Plan," as is standard practice in Jordan's apprenticeship program. *Id.* at 13-14. Because similarly situated members of the program allegedly made more significant mistakes than Jordan and were afforded more leniency and presented with a Personal Improvement Plan before termination, Jordan concluded his termination was discriminatory and retaliatory. *Id.* Accordingly, after exhausting his administrative remedies through the EEOC, he filed this action challenging the termination and seeking damages under Title VII. *Id.*

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

When examining the pleadings of *pro se* parties, courts have wide interpretive latitude. "'However inartfully pleaded,' *pro se* complaints must be held to 'less stringent standards than formal pleadings drafted by lawyers . . . .'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Thus, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). When considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether

the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, courts may consider documents outside the complaint that are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit recommends suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Great Plains Tr. Co.*, 313 F.3d at 329. An "incurable defect" may arise when a complaint's facts are "not actionable as a matter of law." *Taubenfeld v. Hotels.com*, 385 F. Supp. 587, 592 (N.D. Tex. 2004). In such

situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

    **B.**    **Title VII Standard**

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990). To this end, the statute applies to employing entities, and does not attach personal liability to the employing entity's agents. *Ackel v. Nat'l Commc'ns Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *see also Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII.").

To show Title VII race discrimination, Plaintiff must establish he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Plaintiff bears the initial burden of establishing each element in his pleadings. *McDonnell Douglass Corp. v. Green*, 441 U.S. 792, 802 (1973). Only after Plaintiff has demonstrated each element in his pleadings does the burden shift to the defense. *Id.*

"[A]lthough plaintiffs do not 'have to submit evidence to establish a prima facie case . . . at this stage, [they must] plead sufficient facts on all of the *ultimate elements* . . . to make [their] case plausible.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)) (emphasis and alterations in

original). Similarly, to assert a Title VII retaliation claim, "a plaintiff bears the initial burden to show: '(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618-19 (5th Cir. 2020) (quoting *Ackel*, 339 F.3d at 385).

  **C.**  **Administrative Exhaustion Standards**

  The EEOC enforces employment discrimination claims brought under Title VII. *See* 42 U.S.C. § 12117(a). The EEOC offers administrative remedies plaintiffs must exhaust before they can sue in federal court for Title VII violations. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Plaintiffs satisfy their exhaustion requirement by filing a charge of discrimination and receiving a "right-to-sue" letter from the EEOC or relevant state or local agency. *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 120 (5th Cir. 1980). Any resulting lawsuit must be limited to the scope of the EEOC's investigation, reasonably expected to flow from the charge, and filed within a statutory timeframe. *Id.*; *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). When determining if a complaint exceeds the scope of the EEOC proceeding, courts constrain their analysis to the facts in the administrative charge, right-to-sue letter, and complaint. *Pacheco* 448 F.3d at 789. Although the resulting lawsuit can involve "any kind of discrimination like or related to the charge's allegations," the charge must be sufficient to put the employer on notice of the plaintiff's allegations. *Id.* Plaintiffs fail to exhaust their administrative remedies by foregoing the above process or asserting claims beyond the scope of the charge and right-to-sue letter. *Id.*

  "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008). Nevertheless, the

Supreme Court has clarified the exhaustion requirement is not jurisdictional, despite conflicting answers to that question over the last decade. *See Fort Bend Cnty. v. Davis*, ___ U.S., ___, ___, 139 S. Ct. 1843, 1846 (2019). But non-jurisdictional does not mean non-mandatory, and administrative exhaustion remains "a precondition to filing suit in district court." *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983). Thus, complaints asserting unexhausted claims are properly dismissed for failure to state a claim under Rule 12(b)(6), rather than lack of jurisdiction under Rule 12(b)(1). *Id.*

### III.  ANALYSIS

#### A.  Jordan did not exhaust his administrative remedies for claims against the Individual Defendants.

Plaintiffs bringing discrimination claims under Title VII, as Jordan does here, must first exhaust their administrative remedies. *Pacheco* 448 F.3d at 789. Jordan filed a charge of discrimination with the EEOC and received a right-to-sue letter, which typically satisfies the exhaustion requirement. *See* ECF No. 1 at 17-21; *Nilsen*, 621 F.2d at 120. But right-to-sue letters do not endow plaintiffs with carte blanche to pursue claims against anyone loosely related to the acts or omissions recounted in their EEOC charge. Rather, such letters only satisfy the exhaustion requirement for lawsuits "within their scope." *Pacheco* 448 F.3d at 789.

Review of Jordan's charge and right-to-sue letter reveals their insufficiency to satisfy his exhaustion requirement for claims against the Individual Defendants. *See* ECF No. 1 at 17-21. Jordan only listed "Iron Workers Local 263 Apprenticeship Program" on his EEOC form and provided no information implicating the Individual Defendants in his EEOC proceeding. *Id.* at 17-18. Thus, though the Individual Defendants may have been involved in the incidents underlying Jordan's EEOC charge, his right-to-sue letter cannot be construed so widely as to incorporate them within the litigation it contemplates. To the extent Title VII contemplates any litigation against

7

individuals, it is for purposes of establishing *respondeat superior* liability, not personal liability for other agents within the employing entity. *See Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994). As it stands, Jordan's EEOC charge and right-to-sue letter could not have provided the Individual Defendants with advance notice of his claims in this lawsuit. Accordingly, he failed to exhaust his administrative remedies for claims against them, and those claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *McClain*, 519 F.3d at 274; *Cruce*, 703 F.2d at 863.

### B. Even if he had exhausted his administrative remedies, Jordan cannot maintain a plausible Title VII claim against the Individual Defendants.

Ordinarily dismissals for failure to exhaust administrative remedies should be without prejudice so aggrieved plaintiffs may exhaust their administrative remedies and sue again if they fail to reach a nonjudicial resolution. *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997). But because Jordan would not have a plausible Title VII claim against the Individual Defendants even if he exhausted his administrative remedies, and further because he could not amend his pleadings to state a plausible Title VII claim against them, Judge O'Connor should dismiss Jordan's claims against the Individual Defendants with prejudice.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e); *Harvey*, 913 F.2d at 227-28. By its terms, the statute applies to employers and relates to discrimination arising from an employee-employer relationship. *Id.* However, any liability arising from Title VII is on the employing entity; the statute assigns no liability to individuals based on alleged violations of its terms. *See Ackel*, 339 F.3d at 381 n.1.; *Smith*, 298 F.3d at 448. Thus, even if Jordan had exhausted his administrative

remedies, his claims against the Individual Defendants should still be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Jones*, 549 U.S. at 215.

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan*, 343 F.3d at 536 (citing *Leffall*, 28 F.3d at 524). Because that is the case here—Jordan can prove no set of facts that would state a viable Title VII claim against the Individual Defendants—Judge O'Connor should dismiss his claims against them. Because his Title VII claims are "not actionable as a matter of law" against the Individual Defendants, his pleadings suffer from an "incurable defect" with respect to those claims. *See Taubenfeld*, 385 F. Supp. at 592. Because amendment of his claims against the Individual Defendants would be futile, Judge O'Connor should dismiss those claims with prejudice. *Schiller*, 342 F.3d at 566.

    **C.**    **Jordan alleges a plausible Title VII claim against Local 263, and Defendants' arguments to the contrary are predicated upon fact issues, not deficiencies in Jordan's pleadings.**

Judge O'Connor should not grant Defendants' motion to dismiss Jordan's claims against Local 263. Dismissals under Rule 12(b)(6) should be granted rarely, as they are only appropriate where a plaintiff can prove no set of facts that would entitle them to relief for the allegations in the pleadings. *Scanlan*, 343 F.3d at 536 (citing *Leffall*, 28 F.3d at 524). For his Title VII discrimination claim, Jordan need only show he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

The Complaint's allegations satisfy that required showing. For prong (1), it is uncontested Jordan is a member of a protected class. Jordan satisfies prong (2) because he discusses his

qualifications at length. *See* ECF No. 1 at 5-6. Jordan satisfies prong (3) because he specifically alleges he was "unjustly reprimand[ed] and [discipline[ed] . . . for accusations of relatively minor mistakes and without due process . . . [he was] terminated [] all in one meeting." *Id.* at 11. Jordan satisfies prong (4) because he alleges "[t]he same, exact, or worse behavior over a span of several years from similarly situated Hispanic Julio Gonzalez, Plaintiff's predecessor, was ignored . . . on more than one occasion." *Id.* Because his pleadings "raise a right to relief above the speculative level," Jordan alleges sufficient facts to state a claim for Title VII race discrimination. *See Twombly*, 550 U.S. 544, 555 (2007).

The same is true for Jordan's Title VII retaliation claim. To state a claim for Title VII retaliation, Jordan "bears the initial burden to show: '(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" *Badgerow*, 974 F.3d at 618-19 (quoting *Ackel*, 339 F.3d at 385). Jordan satisfies prong (1) by alleging he suffered negative treatment at work, and eventual firing, due to taking administrative action to report his coworkers' use of racial pejoratives. ECF No. 1 at 10-14. He satisfies prong (2) by alleging he was fired for this protected activity and also that he suffered negative work consequences while still on the job. Specifically, he recounts being ousted for his administrative action when his superiors "post[ed] signs in the [] public's view and in the office on several occasions taunting [his] Administrative position." *Id.* at 12. He satisfies prong (3) by alleging Defendants "plac[ed] insubordinate signs on [his] office window denouncing his position" in retaliation for his taking appropriate administrative action. *Id.* Accordingly, Jordan satisfies the pleadings requirement for his retaliation claim.

Defendants claim, "Local 263 [is] the wrongly named entity" and deny an employer-employee relationship between Local 263 and Jordan. But Jordan listed Local 263 in his EEOC

10

charge and names them as his employer in his Complaint. *See* ECF No. 1 at 5, 17. If Defendants are correct, and Jordan wrongfully asserts an employer-employee relationship where none exists, his case should be dismissed. *Harvey*, 913 F.2d at 227-28. But such arguments are evidentiary in nature and thus beyond the scope of a Rule 12(b)(6) analysis. *Yumilicious Franchise, LLC*, 819 F.3d at 174-75. At this stage of the proceedings, the Court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. at 174 (quoting *Twombly*, 550 U.S. at 570). If Local 263 wishes to contest the underlying employer-employee relationship, they must do so by filing a motion for summary judgment or contesting the evidence at trial. Accordingly, Judge O'Connor should deny Defendants' motion to dismiss Jordan's claims against Local 263.

## V.     CONCLUSION

Jordan did not exhaust his administrative remedies for his claims against the Individual Defendants, and even if he had, he could not allege a claim under Title VII against them as a matter of law. Therefore, Judge O'Connor should **GRANT** Defendants' motion for those claims and **DISMISS** Jordan's claims against the Individual Defendants **WITH PREJUDICE**. Jordan alleges plausible claims for discrimination and retaliation under Title VII against Local 263, and Local 263's arguments to the contrary go beyond attacks on his pleading's sufficiency and are thus improper at the Rule 12(b)(6) stage. Therefore, Judge O'Connor should **DENY** Defendants' motion for Jordan's claims against Local 263.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with

a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on January 3, 2022.

*[signature]*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE