IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOEL JORDAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-00715-O-BP** |
| | § | |
| **IRONWORKERS LOCAL 263,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

*Pro se* Plaintiff Joel Jordan ("Jordan") filed an amended complaint in his suit against Defendant Ironworkers Local 263 ("Local 263") on July 1, 2021, alleging racial discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 7. On October 7, 2022, Defendant filed a Motion for Summary Judgment or, Alternatively, Motion to Dismiss, Brief in Support, Appendix in Support, and Reply that are now before the Court. ECF Nos. 32, 33, 34, 40.  Jordan replied with an Affidavit in Opposition and Brief in support on October 31, 2022. ECF Nos. 38, 39. The Court heard oral argument on the Motion on January 5, 2023. After considering the pleadings, applicable legal authorities, and for the reasons stated below, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** Jordan's claims with prejudice. ECF No. 32.

## I.    BACKGROUND

Jordan wants his job back, $95,940 in back pay, and $267,000 in damages for Local 263's alleged violations of Title VII. *See* ECF No. 1 at 15. Jordan was fired in February 2020 and filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in May

2020. *Id.* at 2. Local 263 argues that an entity named Texas Iron Workers Training Trust ("Trust") employed Jordan and later terminated his employment. ECF No. 10 at 2. Jordan received a right-to-sue letter from the EEOC on March 5, 2021, and timely filed this lawsuit on June 3, 2021. ECF No. 1 at 2.

Jordan, an African American, asserts that "racial discrimination is deeply embedded in Iron Workers Local 263" and recounts "racial slurs and derogatory comments and harassment" by Local 263. ECF No. 7 at 8. Despite Jordan's objections, his coworkers allegedly used racial remarks frequently during his tenure. *Id.* Jordan also alleges retaliation on Local 263's part, as he was allegedly subjected to "stricter scrutiny than his predecessors" and ultimately fired after filing an administrative complaint regarding this racially charged workplace. *Id.* at 10.

Jordan's tensions within Local 263 came to a head in February 2020. He claims that he was "repeatedly threatened to be reprimanded and disciplined for relatively minor mistakes" and was fired without management first attempting to implement a "Personal Improvement Plan," as is standard practice in Jordan's apprenticeship program. *Id.* at 10-11. Because similarly situated members of the program allegedly made more significant mistakes than Jordan, were afforded more leniency, and were presented with a Personal Improvement Plan before termination, Jordan concluded that his termination was discriminatory and retaliatory. *Id.* at 11. Accordingly, after exhausting his administrative remedies through the EEOC, he filed this action challenging the termination and seeking damages under Title VII. *Id.* at 15-18.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167,

170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

### B.    Title VII Standard

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990).

Plaintiff bears the initial burden of establishing each element in his pleadings. *McDonnell Douglas Corp. v. Green*, 441 U.S. 792, 802 (1973). Under the modified *McDonnell Douglas* test, a Title VII plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence to survive a motion for summary judgment. *McDonnell Douglas Corp.,* 411 U.S. at 802-04; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981). Once he establishes a *prima facie* case, there is a presumption of discrimination, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. If the defendant makes such a showing, the burden shifts back to the plaintiff to present evidence of a genuine dispute that the articulated "reason is not true, but instead a pretext for discrimination," or that the defendant's "reason, while true, is only one of the reasons for its conduct, and that another 'motivating factor' is [the

Plaintiff's] protected characteristic." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted).

After the *McDonnell Douglas* analysis reaches the pretext stage, the question for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race or gender. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may, therefore, be enough to prevent summary judgment or judgment as a matter of law. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *Sandstad*, 309 F.3d at 897.

However, this showing is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

## III.    ANALYSIS

### A.    Local 263 was not Jordan's Employer.

Before reviewing the merits, the Court first must decide whether Local 263 was Jordan's employer and thereby the proper defendant in this case. To determine that an entity exercises enough control over an individual to qualify as his employer, the Fifth Circuit applies a "hybrid

economic realities/common law control test." *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir. 1993) (quoting *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990) (per curiam), *cert. denied*, 498 U.S. 1026 (1991)). The right to control the employee's conduct is the most important component of determining a joint employer. *Fields*, 906 F.2d at 1019. When examining the control component, the focus is on the right to hire and fire, the right to supervise, and the right to set the employee's work schedule. *Mares v. Marsh*, 777 F.2d 1066, 1068 (5th Cir. 1985). The economic-realities component of the "hybrid economic realities/common law control test" focuses on who paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. *Id.*

Jordan listed Local 263 as his employer in his EEOC charge and named it as his employer in his amended complaint. *See* ECF No. 7 at 3, 14. Local 263 offered evidence including an affidavit from Greg Schulze, Statewide Director for the Trust, showing that the Trust was Jordan's true employer. ECF No. 34 at 4-5. The Trust hired, fired, supervised, and disciplined Jordan as its Apprentice Coordinator. *Id.* Additionally, Mr. Schulze testified in his affidavit that he made Jordan aware that Julio Gonzalez, Local Instructor at Local 263, was not his boss. *Id.* Local 263 also filed copies of Jordan's W-2 forms confirming that the Trust paid Jordan's salary and was his employer. ECF No. 34 at 4, 5, 7.

Jordan contends that he never dealt with the Trust other than for benefits and pension-related issues, and that Local 263 shared the same business address as the Trust. ECF No. 29 at 3, 13, 25. To establish an employer/employee relationship, Jordan alleges that Gonzalez, acting on behalf of Local 263, told him what his job duties were and communicated with him more than anyone else. ECF No. 39 at 3. Despite these statements, Jordan does not provide sufficient summary judgment evidence to support his claim that the Trust and Local 263 are a single or joint employer as Title VII suits require. *See Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d

761, 764 (5th Cir. 1997). Because Jordan fails to present sufficient summary judgment evidence to establish that Local 263, not the Trust, was his employer, his case should be dismissed because he did not sue the proper defendant. *Harvey*, 913 F.2d at 227-28.

> **B.    Even if Jordan had named the right Defendant, he has not raised a fact issue on his Title VII claim.**

> **1.    Discrimination**

To show racial discrimination under Title VII at summary judgment, Jordan must establish that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Jordan did not offer sufficient summary judgment evidence to satisfy all of these requirements. He met the first two because it is uncontested that he is a member of a protected class and that he was qualified for the position he filled. ECF No. 7 at 6. Jordan met the third requirement because both parties acknowledge that he was fired. ECF No. 33 at 18-19. However, Jordan did not satisfy the fourth requirement because he did not offer evidence to prove that he was replaced by someone who was not African American or that he was treated less favorably than other employees outside of his protected class. Instead, he merely alleged "[t]he same, exact, or worse behavior over a span of several years from similarly situated Hispanic Julio Gonzalez, Plaintiff's predecessor, was ignored . . . on more than one occasion." *Id.* Jordan has not offered summary judgment evidence to raise a fact issue on this element. Local 263 did offer evidence that Jordan was fired for "falsifying hours on his timesheets." ECF 34 at 5. Because this evidence rebuts the presumption of discrimination, and Jordan did not offer evidence to create a genuine issue of

material fact on the issue of pretext, summary judgment on his racial discrimination claim would be appropriate.

### 2.    Retaliation

Similarly, to establish a Title VII retaliation claim, "a plaintiff bears the initial burden to show: '(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618-19 (5th Cir. 2020) (quoting *Ackel v. Nat'l Commc'ns*, 339 F.3d 376, 385 (5th Cir. 2003)). Protected activities under Title VII include either participating in the statutory complaint process by filing a charge of discrimination, testifying, or "assisting or participating in any manner in any investigation, proceeding, or hearing" or by opposing unlawful discrimination. 42 U.S.C. § 2000-3(a). An employment action within Title VII's purview includes retaliation if it might "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

Jordan satisfies the first requirement by presenting evidence that he reported his coworker's use of remarks that he considered racist. ECF Nos. 7 at 10-14 and 34 at 13, 48, 70. Both parties acknowledge that Jordan was fired from his job, thereby satisfying the second requirement. Jordan did not meet the final requirement because he did not offer sufficient evidence of a causal link between reporting the inappropriate, race-based comments and his eventual firing. In his own statements, Jordan alleges that he was terminated in retaliation for reporting that books were being sold to students in the union's apprenticeship program in violation of the program's company policies. ECF No. 39 at 10. Because he did not offer any evidence to support a claim that his reporting racial harassment to his superiors caused him to be fired, Jordan's retaliation claim also should be dismissed.

### 3.    Hostile Work Environment

After liberally construing Jordan's pleadings, he also alleges a hostile work environment claim. *See* ECF No. 7. To establish a prima facie case of a hostile work environment, a plaintiff must show:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcomed harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). The Supreme Court has held that an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). The alleged conduct must be both objectively and subjectively offensive to be sufficiently severe or pervasive to alter the conditions of the victim's employment. *Id.* at 21-22. Courts must examine a hostile work environment claim under a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating[;] and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007).

Beginning on or around December 2, 2019, as Local 263 staff members started preparing for their Christmas luncheon, several of them joked and laughed about Jordan in front of him. ECF No. 7 at 9. The Local 236 employees referred to him as "Black Santa." *Id.* Over the course of two weeks leading up to the luncheon, multiple Local 263 employees commented that he "look[s] like Black Santa" and told him that he should dress up as Black Santa for the party. *Id.* On the day of the party, Local 263 President Julio Gonzalez told Jordan that it was a "good time" to go get

9

dressed in his Black Santa costume. *Id.* Additionally, Mr. Schulze, the statewide Training Director for the Trust and Jordan's boss, commented that Jordan looked like Black Santa and laughed. *Id.*

Jordan satisfied the first two requirements for proving a hostile work environment. Both sides agree that the use of the term Black Santa directed at Jordan multiple times over the course of a few weeks leading up to Local 263's Christmas party was based on race and was offensive and inappropriate. Jordan offered evidence that Local 263 employees and an employee of the Trust, Mr. Schulze, suggested that he dress up as Black Santa, and that the comments were offensive. ECF No. 39 at 27-28. To satisfy the fourth and fifth requirements, Jordan needed to offer evidence that these comments pervasively altered his working conditions to create a hostile work environment. *Harris,* 510 U.S. at 22. Jordan asserts that his support staff refused to work for him, but he offered no evidence that proves or suggests that the Black Santa comments or his staff's work stoppage caused any change in his employment conditions when he reported these issues. Although use of the term Black Santa as a racist remark is inappropriate and hurtful, the limited use of that term by one employee of the Trust, Mr. Schultze, on one occasion would not satisfy the requirements to prove a hostile work environment. *Hockman v. Westward Cmmc'ns, LLC,* 407 F.3d 317, 326 (5th Cir. 2004); *see Phau v. Yellen*, No. 22-50542, 2022 WL 17175594 (5th Cir. Nov. 23, 2022).

## V.    CONCLUSION

Local 263 is entitled to summary judgment because it was not Jordan's employer and is not responsible for the discriminatory conduct that Jordan alleges. And, even if Jordan had sued the Trust, he did not meet his summary judgment burden to prove racial discrimination under the *McDonnell Douglas* framework, retaliation, or a hostile work environment. Therefore, Judge O'Connor should **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** Jordan's claims against Defendant **WITH PREJUDICE**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass,* 79 F.3d at 1417.

**SIGNED** on January 20, 2023.


_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE